UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| A.B., a minor, by her parents and natural guardians, C.H. and T.B., | |
| Plaintiffs, | Civil Action No. 08-cv-5247 (NLH)(KMW) |
| v. | OPINION |
| FERN JOHNSON, ELIZABETH VELOSO, MARK CONCANNON, et al., | |
| Defendants. | |

**APPEARANCES**:

Jason L. Greshes, Esquire
Beggin & Greshes
1500 John F. Kennedy Blvd.
Suite 830
Philadelphia, PA 19102
*Attorney for Plaintiffs A.B., a minor, and C.H. and T.B.*

Barbara J. Davis, Esquire
Marshall, Dennehey, Warner, Coleman & Goggin
Woodland Falls Corporate Park
200 Lake Drive East
Suite 300
Cherry Hill, N.J. 08002
*Attorney for Defendant Mark Concannon*

Fern Johnson
and
Elizabeth Veloso
109 Old Orchard Road
Cherry Hill, N.J. 08002
*Pro Se*

**HILLMAN, District Judge**

Plaintiff, A.B., a minor, by her parents and natural guardians, C.H. and T.B. (collectively, "plaintiffs"), have

brought the present suit against defendants, Fern Johnson, Elizabeth Veloso, and Mark Concannon.  Among other claims, Plaintiffs allege that Concannon negligently served alcohol to Johnson and A.B. at his party, contributing to A.B. being sexual assaulted at the hands of Johnson.  Concannon moves for summary judgment against plaintiffs' claim.

For the following reasons expressed below, Concannon's Motion for Summary Judgment is granted in part and denied in part.

**I.    JURISDICTION**

This Court exercises subject matter jurisdiction over the underlying claim pursuant to 28 U.S.C. § 1332.  There is complete diversity between the parties in the underlying action. Plaintiff, A.B., is a citizen of the Commonwealth of Pennsylvania.  C.H. and T.B., parents and natural guardians of A.B., are also citizens of the Commonwealth of Pennsylvania. Defendants, Fern Johnson, Elizabeth Veloso, and Mark Concannon, are all citizens of the State of New Jersey.  The amount in controversy exceeds $75,000.

**II.   BACKGROUND**

In September 2006, A.B. and her twin sister moved into the home of Fern Johnson and Elizabeth Veloso (or, collectively "defendants").  Johnson and Veloso, a married couple, lived in Cherry Hill, New Jersey, and had legal custody of A.B., a minor.

A.B. and her sister lived with Johnson and Veloso so they could attend Cherry Hill High School East.[1]

On October 28, 2006, the day after A.B.'s fifteenth birthday, A.B.'s parents, C.B. and T.B., and her younger siblings came to visit and celebrate her and her twin sister's recent birthday at defendants' home.  Sometime at night, around 7:00 p.m. or so, A.B.'s parents departed.  Soon thereafter, Johnson and Veloso consumed some alcoholic beverages.  Johnson and Veloso eventually left their home to attend a party where they continued to imbibe alcohol.  They left A.B. and the other children at home.  When defendants returned after midnight, they were visibly intoxicated, mumbling and rambling throughout their interactions.

According to A.B., upon their return defendants insisted that A.B. and her sister also consume alcoholic beverages.  Along with defendants, the sisters consumed several drinks of vodka.  A.B. drank about five shot glasses of vodka and became intoxicated.  Her sister had about two shot glasses of vodka.  At some point, Veloso left Johnson and the children, and went to sleep.  Johnson, in turn, escorted the children to the home of Mark Concannon, a neighbor who was hosting a Halloween party.

---

[1] The sisters stayed at defendants' home during the school week.  On weekends, they alternated between defendants' home and returning to their parents' home in Philadelphia, Pennsylvania.  The sisters intended to return to their parents' home during the summer and other periods of vacation.

At Concannon's house,[2] alcoholic beverages were being served at a table on the patio near the back of the house.  According to A.B.'s sister, Johnson told them that when they first arrive at a party, they should locate the alcohol and get a drink.  The sisters walked back to the patio and hung out there.  A.B.'s sister was handed an alcoholic beverage and drank it.  She also saw A.B. drinking from a cup at the party that may or may not have contained alcohol.  Further, Johnson observed that while they were on the patio, both sisters had an alcoholic beverage and A.B. was smoking a cigarette.

Later that night, Johnson and the sisters left the party and returned to their home.  As a result of the alcohol consumption, A.B. grew ill and vomited.  She went to lay down and sleep.  Johnson followed A.B. and told her that she should take off her jacket on which she had vomited.  While she lay inert from excessive alcohol consumption, Johnson removed A.B.'s clothing, including her shorts and underwear.  Johnson then sexually assaulted A.B.

---

[2] Concannon testified at his deposition that he spoke with Johnson and the sisters while they were at his house.  According to Concannon, Johnson already appeared intoxicated.  Concannon also recalled that he told the sisters that it was an "adults' party and they really shouldn't be there at this time."  (Def. App., Exh. D, at 15).  He also mentioned to them that they should not have any alcohol to drink.  Concannon was told that they were merely stopping by and would be leaving soon.  He described the sisters at the party as being "flippant" and "rude."  (Id. at 16).

A.B. reported the incident to her sister.  Her sister contacted their parents, who retrieved the children and, upon returning to their home in Philadelphia, contacted the police. Johnson denies that any sexual encounter occurred between A.B. and himself.  Moreover, Johnson and Veloso urge that the sisters were not permitted, let alone encouraged, to drink alcohol, and that whatever alcohol they consumed was against defendants' wishes.

In October 2008, A.B., through her parents, and her parents individually, filed a suit in this Court against Johnson, Veloso, and Concannon.[3]  Particularly relevant to the present matter, plaintiffs allege that Concannon acted negligently by enabling Johnson and A.B. to consume alcoholic beverages, which further impaired their judgment and abilities to appreciate and control their actions.  In response to plaintiffs' allegations, Concannon has moved for summary judgment.

## III. DISCUSSION

### A.   Standard for Summary Judgment

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that

---

[3] Plaintiffs also named as defendants "John Doe," "Jane Doe," and "John Doe (II)."

the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. A party opposing summary

judgment must do more than just rest upon mere allegations, general denials, or vague statements.  <u>Saldana v. Kmart Corp.</u>, 260 F.3d 228, 232 (3d Cir. 2001).

    **B.**    **Negligence**

Concannon argues that plaintiffs' negligence claim against him fails because plaintiffs proffer no convincing evidence or argument that he owed a legal duty of care to A.B. or that he breached any such duty.  Further, Concannon contends that he did nothing to proximately cause the injuries A.B. suffered at the hands of Johnson and his sexual abuse.  Even if he did serve alcohol to a visibly intoxicated person or a minor, Concannon submits, he is not culpable because Johnson's sexual assault of A.B. was not a reasonably foreseeable action or consequence of Johnson or A.B.'s inebriation.  In other words, the sexual assault of A.B. at the hands of her adult guardian was entirely unforeseeable and cannot render Concannon liable in any way for his alleged service of alcohol to either Johnson or A.B.

Plaintiffs counter that both Johnson and A.B. were visibly intoxicated during their time at Concannon's home, yet alcohol was available to both.  Plaintiffs add that a genuine issue of material fact exists as to whether A.B. drank alcohol at Concannon's party.  According to plaintiffs, Concannon's provision of alcohol to Johnson and A.B. escalated their levels of intoxication and creates a factual question whether it

foreseeably culminated in Johnson's sexual assault of A.B.

"In order to sustain a common law cause of action in negligence, a plaintiff must prove four core elements: (1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages." Polzo v. County of Essex, 960 A.2d 375, 384 (N.J. 2008) (citation, internal quotation marks, and brackets omitted). The imposition of a duty of care depends on an analysis of the totality of the circumstances and, thus, the weighing of numerous factors. Among the relevant factors are

> the nature of the underlying risk of harm, that is, its foreseeability and severity, the opportunity and ability to exercise care to prevent the harm, the comparative interests of, and the relationships between or among, the parties, and, ultimately, based on considerations of public policy and fairness, the societal interest in the proposed solution.

J.S. v. R.T.H., 714 A.2d 924, 928 (N.J. 1998). "Foreseeability of the risk of harm is the foundational element in the determination of whether a duty exists." Id.; see Sacci v. Metaxas, 810 A.2d 1119, 1124 (N.J. App. Div. 2002) ("An important factor in applying an objective analysis is the foreseeability of the risk of harm based on a defendant's knowledge of the risk."). "In some cases where the nature of the risk or the extent of harm is difficult to ascertain, foreseeability may require that the defendant have a 'special reason to know' that a 'particular plaintiff' or 'identifiable class of plaintiffs' would likely

suffer a 'particular type' of injury." J.S., 714 A.2d at 928 (citation omitted). However, "[a] plaintiff is not required to show that the ultimate harm is foreseeable; all that is required is that a harm is likely to befall a victim." Sacci, 810 A.2d at 1126.

Another element to determine whether liability may attach to the breach of a duty is proximate causation, which is "that combination of logic, common sense, justice, policy and precedent that fixes a point in the chain of events, some foreseeable and some unforeseeable, beyond which the law will bar recovery." J.S., 714 A.2d at 935 (citation and internal quotation marks omitted). Proximate causation often presents issues reserved for juries to resolve, but a court may, as a matter of law, "reject[] the imposition of liability for highly extraordinary consequences." Id.

Plaintiffs seem to espouse two theories of negligence against Concannon. First, plaintiffs assert that Concannon impermissibly furnished alcohol to Johnson, who was visibly intoxicated at the time he arrived at Concannon's home, thereby enhancing his level of intoxication and rendering him more volatile and prone to commit dangerous acts. On this theory, plaintiffs must fail. New Jersey's social host statute, N.J.S.A. 2A:15-5.6, expressly limits the liability of social hosts who serve visibly intoxicated adults to any automobile accidents

9

caused by the intoxicated adults' drunken driving.  See Steele v. Kerrigan, 689 A.2d 685, 696 (N.J. 1997) (explaining that "the 1988 amendments to the Comparative Negligence Act provide that social hosts will be liable for damages to third parties caused by adult guests whom the host negligently served when visibly intoxicated only when those damages were caused by the negligent operation of an automobile") (emphasis added).  In their opposition brief to Concannon's motion, plaintiffs concede that Concannon is not liable under the social host law or New Jersey's Dram Shop Act.  Therefore, any negligence claim premised on Concannon's service of alcohol to Johnson is dismissed, and to that extent, Concannon's Motion for Summary Judgment is granted.

However, plaintiffs advance another theory of negligence, alleging that Concannon impermissibly served alcohol to A.B., a minor.  In response, Concannon argues that he did not owe a duty to A.B. and, alternatively, Johnson's sexual assault of A.B. did not constitute a foreseeable consequence proximately caused by Concannon's service of alcohol at his party.  With respect to this claim, the Court finds in favor of plaintiffs.

Contrary to Concannon's assertions, New Jersey law suggests that a social host does owe a duty of care to any minors who may access the host's alcohol and, accordingly, may be liable for the consequences that stem from the minors' illicit consumption of that alcohol.  In other words, under a common law cause of action

10

for negligence, a social host may be liable for serving alcohol to a minor. New Jersey's social host statute makes clear that it limits liability only with respect to adults. See N.J.S.A. 2A:15-5.6a ("This act shall be the exclusive civil remedy for personal injury or property damage resulting from the negligent provision of alcoholic beverages by a social host to a person who has attained the legal age to purchase and consume alcoholic beverages."). Accordingly, the full panoply of common law redress is still available for injuries and damages caused by a social host's provision of alcohol to a minor. The Supreme Court of New Jersey recognized as much in Steele v. Kerrigan, 689 A.2d 685 (N.J. 1997), where it explained: "In recent legislation limiting the liability of social hosts for damages caused by guests who were served after they became visibly intoxicated to injuries to third parties in automobile accidents, the Legislature specifically preserved full common-law liability of social hosts for damages caused by minors to others and even to themselves." Id. at 699; see Componile v. Maybee, 641 A.2d 1143, 1147 (N.J. Law Div. 1994) ("A social host may only be directly liable to minors and to third persons injured in automobile accidents."); see also Linn v. Rand, 356 A.2d 15, 19 (N.J. App. Div. 1976) ("[W]e reject the view adopted below that the furnishing of alcoholic beverages to a minor, in a social setting, gives immunity to the host for the negligence of his

11

guests which is a proximate cause of injury to an innocent third party.").[4]

That social hosts may be exposed to possible liability for the service of alcohol to minors is unsurprising and entirely in accord with public policy, common sense, reason, and principles of fairness.  Legislatures and courts have readily recognized the deleterious effects of alcohol consumption, the vulnerability of minors, and the synergistic dangers of merging the two.  See Steele, 689 A.2d at 698 ("In general, New Jersey's policy against serving minors enjoys even stronger legislative support than the policy against serving intoxicated adults.").  After all, the service of alcohol to minors and the purchase or consumption of alcohol by minors are unlawful offenses.  See id.

It is well documented and widely understood, through scholarship and practical experience, that the excessive consumption of alcohol may impair a person's judgment or common sense, mitigate his or her inhibitions or self-control, and give rise to detrimental, even dangerous, misconduct.  Alcohol is

---

[4] Concannon suggests that liability for a social host, like himself, is not as expansive as the liability for a licensed alcoholic beverage server, or a dram shop.  Though licensed alcoholic beverage servers may harbor greater knowledge and responsibility as to the detriments and consequences of alcohol consumption and intoxication, see Steele, 689 A.2d at 698-99, the aforementioned precedent demonstrates that social hosts may be subject to a similar, if not the same, standard of care when it comes to serving alcohol to minors.  See Linn, 356 A.2d at 17-18.

notorious for causing in some people aggressive and reckless behavior.  <u>See</u> <u>Sacci</u>, 810 A.2d at 1126 ("In the cases imposing liability on social hosts who serve alcohol, courts have recognized the direct correlation between alcohol consumption and reckless conduct resulting in personal injury or property damage."); <u>Finney v. Ren-Bar, Inc.</u>, 551 A.2d 535 (N.J. App. Div. 1988) (holding that a tavern may be liable for negligence where an underage patron consumed alcohol and then caused a fire that burned down his house).  In fact, physical altercations and violent behavior have been deemed reasonably foreseeable consequences of excessive alcohol consumption.  <u>See</u> <u>Steele</u>, 689 A.2d at 697 ("Without question, the occasional assault by a belligerent drunk is a foreseeable consequence of serving alcohol.").  Moreover, it is generally understood that minors are specially susceptible to, and influenced by, the effects of alcohol.  <u>See</u> <u>id.</u> at 698-99; <u>see also</u> <u>Finney</u>, 551 A.2d at 539 ("The propensities of alcohol consumption to create aggressive, combative, and often reckless behavior in adults is legendary; surely, it cannot be averred that such behavior is any less likely to result from the consumption of alcohol by those deemed legally incompetent as a class to handle its effects." (quoting <u>Alumni Ass'n v. Sullivan</u>, 535 A.2d 1095, 1100-1101 (Pa. Super. Ct. 1987))).  Consequently, "[i]n New Jersey's common law, the liability of a person controlling alcohol and serving it to

13

minors has historically preceded and even exceeded that respecting service of alcohol to adults." Steele, 689 A.2d at 699 (quoting Finney, 551 A.2d at 538).[5]

Therefore, the Court concludes that a social host, like Concannon, owes a duty of care to not serve or negligently provide alcohol to any of his guests that are minors, such as A.B.  This duty, borne by legislative and judicial fiat, is informed and augmented by the severity of the attendant consequences, the vulnerability of the class of people at risk, and the minimal efforts necessary to shield minors from the dangers of alcohol.  In the event that a social host does provide alcohol to a minor and breaches his or her duty, that host may be

---

[5] While we observe that New Jersey courts could be clearer on these issues, altering the facts slightly highlights why the distinction we have made makes sense when compared to the existing precedents.  We think it beyond question that if Johnson had appeared at Concannon's home alone, was served alcohol while visibly intoxicated, and walked home next door to assault A.B., the New Jersey social host statute would bar such an action since no automobile was involved.  The New Jersey Legislature has struck a balance to preclude social hosts who serve adults from being vicariously liable for every tort their guests might commit after they leave the host's home.  It is not for this Court to disturb that balance.  We are equally assured that if A.B. had appeared alone at Concannon's home, was served alcohol intentionally or negligently, became drunk and therefore vulnerable, and on her way home was sexually assaulted as a result of her being incapacitated by alcohol, the common law might render Concannon liable. Adding Johnson to that factual scenario only heightens that risk.  It seems to this Court foreseeable that if a visibly intoxicated adult shows up late in the evening at a party with a visibly intoxicated minor who is not a family member that the minor might later become a victim of a sexual assault at the hands of that adult.

held liable for whatever reasonably foreseeable harm the provision of alcohol proximately caused.

As for proximate causation, the Court finds that this case does not present a highly extraordinary set of circumstances that should be, or could be, resolved as a matter of law.  Plaintiffs allege that A.B.'s excessive alcohol consumption rendered her more vulnerable to victimization, particularly Johnson's sexual assault.  Just as the introduction of alcohol and intoxication may spur more physical confrontations and assaults, it is not a stretch of the imagination to believe that intoxicating alcohol also may give rise to more sexual assaults.  Thus, a reasonable fact-finder may conclude that the provision of alcohol to a minor predictably renders that minor more susceptible to the unwanted and unlawful advances of a lecherous assailant.  Therefore, the issue of proximate causation in this case should be reserved for a jury.  See Showalter v. Barilari, Inc., 712 A.2d 244, 248 (N.J. App. Div. 1998) ("Generally, issues of proximate cause are left to the jury . . . even when the injury was caused by a seemingly extraordinary event." (citation omitted)); see also Finney, 551 A.2d at 538 ("Our review of the precedents respecting alcohol persuades us . . . that foreseeability has been extended in cases involving a duty not to serve liquor to minors.").

Here, we recognize that the evidence concerning A.B.'s purported alcohol consumption at Concannon's house is neither

15

conclusive nor overwhelming. It appears that A.B. may already have been intoxicated by the time she arrived at Concannon's party, and no evidence proves definitively that she consumed any alcohol while at his party. Nevertheless, a genuine issue of material fact still exists. It is undisputed that alcohol was being served on or near the patio area in Concannon's home and that the sisters visited that area. Though A.B. could not recall whether she imbibed alcohol at Concannon's residence, her sister testified that she, herself, was served alcohol at the party and that she witnessed A.B. drink something from a cup. Johnson testified that he observed both sisters drinking alcohol at the party. Based on this evidence, a jury could find that A.B. acquired and consumed alcohol at Concannon's home, and Concannon acted negligently by furnishing alcohol to a minor. If a jury were to make those determinations, it would then have to decide to what degree, if at all, Concannon's negligence contributed to A.B.'s injuries. The jury might conclude that A.B. was already compromised when she reached Concannon's home and nothing that happened there contributed to any harm she suffered at the hands of Johnson. Or, the jury might find that both homes, Concannon's and Johnson and Veloso's, contributed in some measure to any harm that occurred. Those questions, however, fall within the purview of the jury and cannot be decided by this Court at this time.

Therefore, with respect to any claim premised on Concannon's

provision of alcohol to A.B., Concannon's Motion for Summary Judgment is denied.

### IV.     CONCLUSION

For the foregoing reasons, Concannon's Motion for Summary Judgment is granted in part and denied in part.  An Order consistent with this Opinion will be entered.

Dated: December 23, 2010              /s/ NOEL L. HILLMAN
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.